Iris Fein (IWF-6826)
Alexander D. Lee (AL-2500)
Peter Jakab (*Pro Hac Vice* To Be Filed)
FEIN & JAKAB
The Woolworth Building
233 Broadway · Suite 930
New York, New York 10279
(212) 732-9290 Telephone
(212) 227-6479 Facsimile
*Attorneys for Plaintiff*
*Un Chu (Nancy) Kang*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UN CHU (NANCY) KANG, individually, as shareholder of NEXTRAN GROUP, INC. and as member of INEXTNET, LLC., <br><br> Plaintiff, <br><br> -against- <br><br> JAE HYUNG PARK (a/k/a JAE PARK, JAE H. PARK, JAE HEONG PARK, DONALD PARK and/or TONY PARK), HANG YONG PARK (a/k/a HANG Y. PARK, EDMOND POWELL, ETHAN POWER and ERIC PARK), YOUNG SOOK YANG (a/k/a YOUNG YANG), SIMON BOLTUCH, NEIL HOBBS-FERNIE, LEONARD G. SANFORD, RICK RODRIGUES, INEXTNET, LLC, NEXTRAN GROUP INC., NEXTRAN INDUSTRIES, INC., INNOBETA SYSTEMS, INC., TWO STARS USA, INC. (d/b/a MONEY MARKETING and/or MONEY MARKETING, INC.), JOHN DOES 1-10 and XYZ CORPS. 1-10, <br><br> Defendants. | Civil Action <br><br> Case No.: <br><br> **COMPLAINT AND** <br> <u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff, Un Chu (Nancy) Kang, individually, as shareholder of Nextran Group Inc. and as member of Inextnet, LLC., by and through her undersigned attorneys of record, alleges as follows:

## NATURE OF ACTION

1.     Using fraudulent statements and omissions of key facts, Defendants persuaded Plaintiff and a number of others to invest in their various entities with promises of substantial returns.  Defendants then looted those entities of their invested funds and other assets, thereby enriching themselves and causing Plaintiff's investments to lose all value.

2.     This is an action for fraud, securities fraud, breaches of fiduciary duty, corporate waste, mismanagement, oppression of minority shareholders and other claims for Defendants' (a) wrongful conduct in making false and misleading representations while concealing material information regarding contracts, finances, business prospects, debts, insider self-dealing and other material information as well as for (b) diverting, misappropriating, stealing, wasting and/or co-mingling to their own use the assets belonging to the companies in which Plaintiff invested.

3.     These defendants have orchestrated a multi-million dollar fraud that has resulted in numerous investors, including Plaintiff, losing their entire investments, all to the enrichment of Defendants, who treated the invested funds and company assets as their own personal "piggy-banks" and whose intentional, reckless and negligent misconduct in failing to operate the companies for the shareholder best interests resulted in failure of those companies, leaving Plaintiff's shares and membership units valueless.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and jurisdiction over the state law claims, and any parties against whom no federal claim is asserted, pursuant to 28 U.S.C. § 1367, as all such claims are part of the same case or controversy.  In addition, this Court has jurisdiction over all claims pursuant to 28 U.S.C. § 1332(a) as the aggregate amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney's fees, Plaintiff is a citizen of the State of New York and Defendants are all either citizens of the State of New Jersey or are corporations chartered under the laws of, and maintain a principal place of business in, the State of New Jersey.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, et. seq., as the subject of the claims arose in the State of New Jersey and all Defendants reside in New Jersey. Venue is also proper under 18 U.S.C. § 1965(a) because all Defendants transact or have transacted business in this District at times material to this action.

6.     This action involves common issues of fact and grows out of the same events and transactions as *Sang Sung Lee, et. al. v. Nextran Group Inc.*, 2:08-CV-4319 (WJM) (D.N.J.); and *Young Tai Choi, et. al. v. Nextran Group, Inc.*, BER-L-2181-09 (Super. Ct. N.J.).

## PARTIES

7.     Plaintiff Un Chu Kang ("Kang") is an individual who resides in the State of New York.

8.     Upon information and belief and at all relevant and material times herein, Defendant, Jae Hyung Park (a/k/a Jae Park, Jae H. Park, Jae Heong Park, Donald Park and/or Tony Park) (hereinafter "T. Park"), was and still is an individual residing at 6 Grand Cove Way, Edgewater, New Jersey 07020.

9.      Upon information and belief and at all relevant and material times herein, Defendant, Hang Yong Park (a/k/a Hang Y. Park, Edmond Powell, Ethan Power and Eric Park) (hereinafter "E. Park"), was and still is an individual residing at 6 Grand Cove Way, Edgewater, New Jersey 07020.

10.     Upon information and belief and at all relevant and material times herein, Defendant, Young Sook Yang (a/k/a Young Yang) (hereinafter "Yang"), was and still is an individual residing at 6 Grand Cove Way, Edgewater, New Jersey 07020.

11.     Upon information and belief, Defendant Yang is the natural mother of Defendants T. Park and E. Park.

12.     Upon information and belief and at all relevant and material times herein, Defendant, Simon Boltuch ("Boltuch"), was and still is an individual who resides in the State of New Jersey.

13.     Upon information and belief and at all relevant and material times herein, Defendant, Neil Hobbs-Fernie ("Hobbs"), was and still is an individual who resides in the State of New Jersey.

14.     Upon information and belief and at all relevant and material times herein, Defendant, Leonard G. Sanford ("Sanford"), was and still is an individual who resides in the State of New Jersey.

15.     Upon information and belief and at all relevant and material times herein, Defendant, Rick Rodrigues ("Rodrigues"), was and still is an individual who resides in the State of New Jersey.

16.     Upon information and belief and at all relevant and material times herein, Defendant Inextnet, LLC (hereinafter "Inextnet"), was and still is a limited liability corporation

chartered under the laws of the State of New Jersey with its offices located at 57 Romanelli Avenue, South Hackensack, New Jersey 07606.

17.     Upon information and belief and at all material times herein, Defendant T. Park was and still is the chief executive officer, president, member, owner, control person and/or principal of Defendant Inextnet.

18.     Upon information and belief and at all material times herein, Defendant E. Park was and still is the chief executive officer, president, member, owner, control person and/or principal of Defendant Inextnet.

19.     Upon information and belief and at all material times herein, Defendant Yang was and still is the chief executive officer, president, member, owner, control person and/or principal of Defendant Inextnet.

20.     Upon information and belief and at all material times herein, Defendant Boltuch was and still is secretary, member, owner, control person and/or principal of Defendant Inextnet.

21.     Upon information and belief and at all material times herein, Defendant T. Park, E. Park, Yang and Boltuch managed the day-to-day operations and affairs of Defendant Inextnet.

22.     Upon information and belief and at all relevant and material times herein, Defendant, Nextran Group Inc. ("Nextran") was and still is a corporation chartered under the laws of the State of New Jersey with its offices located at 57 Romanelli Avenue, South Hackensack, New Jersey 07606.

23.     Upon information and belief and at all material times herein, Defendant T. Park was and still is the chief executive officer, director, control person and co-founder of Defendant Nextran.

24.     Upon information and belief and at all material times herein, Defendant E. Park was and still is the secretary, chief operations officer, director, control person and co-founder of Defendant Nextran.

25.     Upon information and belief and at all material times herein, Defendant Yang was and still is a control person and/or director of Defendant Nextran.

26.     Upon information and belief and at all material times herein, Defendant Boltuch was and still is the chief financial officer and control person of Defendant Nextran.

27.     Upon information and belief and at all material times herein, Defendant Hobbs was and still is a director, officer and/or control person of Defendant Nextran.

28.     Upon information and belief and at all material times herein, Defendant Sanford was and still is a director, officer and/or control person of Defendant Nextran.

29.     Upon information and belief and at all material times herein, Defendant Rodrigues was and still is a director, officer and/or control person of Defendant Nextran.

30.     Upon information and belief and at all material times herein, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues managed the day-to-day operations and affairs of Defendant Nextran.

31.     Upon information and belief and at all material times herein, Defendant Nextran Industries, Inc. ("Nextran 2") was and still is a corporation chartered under the laws of the State of New Jersey with its offices located at 57 Romanelli Avenue, South Hackensack, New Jersey 07606.

32.     Upon information and belief and at all material times herein, Defendant T. Park was and still is the chief executive officer, president, owner and/or principal of Defendant Nextran 2.

33.     Upon information and belief and at all material times herein, Defendant E. Park was and still is the chief executive officer, president, owner and/or principal of Defendant Nextran 2.

34.     Upon information and belief and at all material timers herein, Defendants T. Park and E. Park managed the day-to-day operations and affairs of Defendant Nextran 2.

35.     Upon information and belief and at all material times herein, Defendant Innobeta Systems, Inc. ("Innobeta") was and still is a corporation chartered under the laws of the State of New Jersey with its offices located at 57 Romanelli Avenue, South Hackensack, New Jersey 07606.

36.     Upon information and belief and at all material times herein, Defendant T. Park was and still is the chief executive officer, president, owner and/or principal of Defendant Innobeta.

37.     Upon information and belief and at all material times herein, Defendant E. Park was and still is the chief executive officer, president, owner and/or principal of Defendant Innobeta.

38.     Upon information and belief and at all material times herein, Defendants T. Park and E. Park managed the day-to-day operations and affairs of Defendant Innobeta.

39.     Upon information and belief and at all relevant and material times herein, Defendant, Two Stars USA, Inc. (d/b/a Money Marketing and/or Money Marketing, Inc.) ("MMI") was and still is a corporation chartered under the laws of the State of New Jersey with its offices located at 57 Romanelli Avenue, South Hackensack, New Jersey 07606.

40.     Upon information and belief and at all material times herein, Defendant T. Park was and still is the chief executive officer, president, owner and/or principal of Defendant MMI.

41.     Upon information and belief and at all material times herein, Defendant E. Park was and still is the chief executive officer, president, owner and/or principal of Defendant MMI.

42.     Upon information and belief and at all material times herein, Defendants T. Park and E. Park managed the day-to-day operations and affairs of Defendant MMI.

43.     Upon information and belief and at all material times herein, Defendants XYZ Corps. 1-10 ("XYZ")  are either actual or fictitious corporations and/or partnerships that are parents, subsidiaries, agents and/or affiliates of Defendants Inextnet, Nextran, Nextran 2, Innobeta and MMI.

44.     Upon information and belief and at all material times herein, Defendants T. Park was and still is the chief executive officer, president, member, owner and/or principal of Defendants XYZ.

45.      Upon information and belief and at all material times herein, Defendants E. Park was and still is the chief executive officer, president, member, owner and/or principal of Defendants XYZ.

46.     Upon information and belief and at all material times herein, Defendants Yang was and still is the chief executive officer, president, member, owner and/or principal of Defendants XYZ.

47.     Upon information and belief and at all material times herein, Defendants T. Park, E. Park and Yang managed the day-to-day operations and affairs of Defendants XYZ.

48.     Upon information and belief and at all material times herein, Defendants John Does 1-10 are actual or fictitious individuals that are executives, owners, members and/or principals of Defendants XYZ.

49.     Defendants are the agents, principals and alter-egos of one another, aiding and abetting one another's conduct alleged herein, conspiring with one another to commit the acts and omissions set forth herein.

## INTRODUCTION AND SUMMARY

50.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

51.     Upon information and belief, from September 2004 through October 2005, Defendants solicited potential individual investors, residing, and/or operating small businesses, throughout the States of New York and New Jersey, to invest in and/or purchase shares of Defendants Nextran and Inextnet.

52.     Upon information and belief, Defendants mainly targeted and solicited small businesses owned and operated by first and second generation Korean-Americans and Chinese-Americans throughout the States of New York and New Jersey.

53.     Upon information and belief, Defendants T. Park and E. Park were well known to these Korean-American and Chinese-American small business owners because T. Park and E. Park previously solicited, sold, installed and operated ATM kiosks at these small businesses.

54.     Defendants approached investors, including Plaintiff, with oral and written representations of fact as detailed below and compelling assurances that these companies were poised for substantial profits that would result in the individual investors enjoying multifold returns.

55.     Defendants exploited the trust and confidence accorded them by these business owners by reason of their prior dealings.

56.     Upon information and belief, Defendants solicited hundreds of individuals.

57.     Upon information and belief, approximately twenty to thirty individuals actually invested.

58.     Upon information and belief, Defendants received over five-million dollars ($5,000,000) from investors, including six-hundred and fifty thousand dollars ($650,000.00) from Plaintiff Kang in invested funds and another one-hundred and fifty-thousand dollars ($150,000) from Plaintiff Kang in loans.

59.     At all relevant and material times herein, Defendants engaged in a systematic scheme to first solicit investment based on materially false and misleading representations and material omissions of fact and then to knowingly steal, misappropriate, co-mingle, divert, transfer, assign or otherwise dispose to their benefit, the invested funds and assets of Nextran and Inextnet, to the detriment of the shareholders and investors of Nextran and Inextnet, including Plaintiff.

60.     At all relevant and material times herein, Defendants failed to keep financial or other business records, failed to observe corporate formalities and treated corporate funds, invested funds and assets of Nextran and Inextnet as their personal assets, ignoring the corporate form and the separateness of corporate entities, to the detriment of the shareholders and investors of Nextran and Inextnet, including Plaintiff.

61.     At all relevant and material times herein, Defendants siphoned and transferred corporate funds, invested funds and assets of Nextran and Inextnet for their personal use, and to other entities owned or controlled by them including, without limitation, Nextran 2, Innobeta, MMI and/or used those funds to create new separate businesses, including but not limited to, Defendants XYZ.

62.     At all relevant and material times herein, Defendants XYZ, owned by Defendants T. Park, E. Park and/or Yang, had a business address at 57 Romanelli Avenue, South Hackensack, New Jersey 07606 and/or 6 Grand Cove Way, Edgewater, New Jersey 07020.

## FACTUAL BACKGROUND

### I.  INEXTNET

#### A.  Initial Investment

63.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

64.     At all relevant and material times herein, Plaintiff Kang was and is a citizen of the State of New York.

65.     In or about December 2004, Defendants E. Park and T. Park approached Plaintiff with an investment proposal in a newly formed company, Defendant Inextnet.  Inextnet's purposed business was to provide public wireless internet connections for a pre-paid fee.

66.     Defendants E. Park and T. Park represented to Plaintiff at meetings and by telephone in December 2004, that the invested funds they were soliciting were to be used to purchase and/or develop equipment and software to conduct business connected with providing public wireless internet connections services.

67.     Upon information and belief, these representations were false and directly or constructively known to be so by T. and E. Park, as Defendants never intended to purchase and/or develop equipment and software to provide public wireless internet connections, and never did so.

11

68.     Defendants E. Park, T. Park represented to Plaintiff at meetings and by telephone in December 2004, that the managers of the company, E. Park and T. Park, would not take salaries or distributions from the invested funds until returns on investment had been generated.

69.     Upon information and belief, this representation was false and directly or constructively known to be so by T. and E. Park, as Defendants intended to take either salary or distributions from the invested funds and did so.

70.     Defendants E. Park, T. Park represented to Plaintiff at meetings and by telephone in December 2004, that investment funds would be maintained in a separate segregated account.

71.     Upon information and belief, this representation was false and directly or constructively known to be so by T. and E. Park, as Defendants never maintained nor intended to maintain the investment funds in a separate segregated account and instead used and co-mingled the invested funds with their own or that of other entities owned or controlled by them.

72.     Plaintiff reasonably relied on these material and fraudulent representations and omissions made by Defendants.

73.     On or about December 28, 2004, Plaintiff, relying on the material and fraudulent representations made by Defendants, was caused to invest two-hundred and fifty-thousand dollars ($250,000.00) in Inextnet.

74.     Had Plaintiff known that Defendants made material and fraudulent representations and omissions, she would have not invested into Inextnet and would not have lost the monies she invested.

75.     Had Defendants used the funds as represented, not taken distributions and maintained segregated accounts, Plaintiff would not have suffered the complete loss of her investment.

## B.  Limited Liability Company Operating Agreement

76.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

77.    On or about January 20, 2005, Defendants sent to Plaintiff a document drafted by Defendants entitled Inextnet Limited Liability Company Operating Agreement ("Operating Agreement").

78.    The Operating Agreement stated that Inextnet was comprised of three managing member, Defendants T. Park, E. Park and Yang, and seven non-managing members, including Plaintiff.  Managing members, T. Park, E. Park and Yang, made no capital contributions and non-managing members made contributions totaling one-million one-hundred and twenty-five thousand dollars ($1,125,000.00).

79.    Managing members retained eighty-seven and one-half percent (87.5%) ownership and non-managing members retained a total of twelve and one-half percent ownership (12.5%).

80.    Managing member T. Park, E. Park and Yang retained twenty-six and one-quarter percent (26.25%), twenty-six and one-quarter percent (26.25%) and thirty-five percent (35%) interest in Inextnet, respectively.

81.    Plaintiff directly asked T. and E. Park whether Yang actually works for and/or manages Inextnet, such as to justify Yang's thirty-five percent (35%) interest in Inextnet.

82.    Defendants expressly represented that Yang does work for and/or manages Inextnet, justifying her thirty-five percent (35%) interest in Inextnet.

83.    Upon information and belief, this representation was false and known to be so by T. and E. Park, as their mother, Yang, never worked for or managed Inextnet, nor did she ever intend to work for and/or manage Inextnet.

84.    Plaintiff reasonably relied on this material and fraudulent representation.

85.    Plaintiff, relying on this material and fraudulent representation, was caused to maintain rather than withdraw her investment in Inextnet.

86.    Had Plaintiff known that Defendants intended to divert thirty-five (35%) of the invested funds and assets of Inextnet to someone who neither invested in nor managed the company, she would have immediately withdrawn her investment from Inextnet and not lost the monies she had invested and subsequently invested as set forth below.

87.    Defendants, via the Operating Agreement, stated and represented that the only manner in which members' capital accounts could be decreased would be through distributions to members and/or members sharing in the net losses of Inextnet in accordance with generally accepted accounting principles.

88.    Upon information and belief, this representation was false, and directly or constructively known by T. and E. Park to be so, as Plaintiff's capital account was decrease by reasons other than those stated, including, without limitation, false accounting statements and Defendants making unauthorized distributions to themselves or their entities not in furtherance of Inextnet's business.

89.    Plaintiff reasonably relied on these material and fraudulent representations.

90.    Plaintiff, relying on these material and fraudulent representations, was caused maintain rather than withdraw her interest in Inextnet and to make further investment as set forth below.

91.     Had Plaintiff known that Defendants made these material and fraudulent representations, she would have immediately withdrawn her investment from Inextnet and not lost the monies she had invested and subsequently invested, as set forth below.

92.     Had thirty-five percent (35%) of the ownership not been gifted to Yang for no consideration and had the rules governing Plaintiff's capital account been known, Plaintiff would neither suffered the loss of her investment.

### C.  Second Investment

93.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

94.     In March 2005, Defendants T. Park and E. Park contacted Plaintiff in order to solicit additional investment from Plaintiff into Inextnet.

95.     Plaintiff asked about into the operational and financial status of Inextnet and the reasons why Inextnet needed additional investments.

96.     Defendants E. Park, T. Park represented to Plaintiff that Inextnet was in final contract negotiations with a major third-party and needed additional funds to purchase additional equipment to satisfy the third-party business needs.

97.     Upon information and belief, this representation was false, and directly or constructively known by T. and E. Park to be so, as Defendants were not in negotiations with a major third-party and instead knew that these invested funds would be diverted to Defendants' other uses, including personal uses, not connected with the business of Inextnet.

98.     Plaintiff reasonably relied on these material and fraudulent representations and omissions.

99.     On or about March 29, 2005, Plaintiff, reasonably relying on Defendants' material and fraudulent representations and omissions, was caused to invest an additional two-hundred and fifty-thousand dollars ($250,000.00) in Inextnet.

100.    Had Plaintiff known that Defendants made material and fraudulent representations and omissions, she would have not invested the additional two-hundred and fifty-thousand dollars ($250,000.00) in Inextnet and would have immediately withdrawn her initial investment from Inextnet and not lost the monies she invested.

101.    Had Inextnet been in negotiations with a substantial customer and had Inextnet used Plaintiff's additional investment to purchase equipment used in Inextnet's business, Plaintiff's investment would not been rendered completely valueless.

### D.  Meetings With Managing Members

102.    Over the course of the following two years, T. and E. Park communicated with Plaintiff several times, either in face to face meetings or by telephone or in writing during which these defendants represented that the business of Inextnet was continuing and that its finances were stable, specifically representing that Plaintiff's capital account stood at between four-hundred thousand dollars ($400,000.00) and five-hundred thousand dollars ($500,000) at various point throughout the period.

103.    During these communications, Defendants omitted to disclose material facts that, upon information and belief:

a.      Inextnet diverted assets to Defendants and entities controlled by Defendants;

b.      Inextnet failed to close contracts; or

16

c.      Conduct business of the nature set forth in the Operating Agreement.

104.    On or about October 6, 2007, T. and E. Park called and held a face to face meeting of the Inextnet investors.  Nextran investors were also present.

105.    During the meeting, Defendants T. Park and E. Park made fraudulent representations regarding new contracts being negotiated for substantial business for Inextnet and Nextran.  T. Park and E. Park represented that Nextran and Inextnet were at the final stages of negotiations of a very large deal with a third party or parties and that all of the members and shareholders were poised to receive multifold returns.

106.    Upon information and belief, this representation was false, and directly or constructively known to be so by Defendants, because no such transactions were in the final stages of negotiations.

107.    Non-managing members/unit holders, including Plaintiff, reasonably relied on T. Park and E. Park's representations and the meeting ended without the members taking any action.

108.    Had Plaintiff known that Defendants made material and fraudulent representations, she would have immediately withdrawn her investment from Inextnet and not lost the monies she invested.

109.    Throughout the relevant and material time period, Defendants provided to Plaintiff annual Schedule K-1 forms, indicating that Plaintiff's 2005, 2006, 2007 and 2008 ending capital account balance in Inextnet were $465,164, $448,439, $431,465 and $407,465, respectively.

110.    Upon information and belief, the Schedule K-1 statements provided to Plaintiff were false, and directly or constructively known to be so by Defendants, and not in accordance with GAAP.

17

111.    Plaintiff, reasonably relying on these material and fraudulent representations, was cause not to withdraw her investment in Inextnet.

112.    Had Plaintiff known that Defendants made material and fraudulent representations and omissions, she would have immediately withdrawn her investment from Inextnet and not lost the monies she invested.

113.    Upon information and belief, at some time after the October 7, 2007 meeting, Defendants mismanaged the assets of Inextnet and wasted and/or misappropriated its assets by transferring all or substantially all of its assets, to Nextran, a company controlled by Defendants in a transaction not authorized the Plaintiff or the other investors in Inextnet.

114.    On or about February 8, 2008, Plaintiff received a letter from Inextnet and E. Park stating that pursuant to the October 6, 2007 meeting, the members of Inextnet approved the acquisition of Inextnet by Nextran.  The letter further stated that Plaintiff's ownership of Inextnet would be converted into shares of common stock in Nextran.

115.    Plaintiff was and is unaware of any resolution or written consent of the members of Inextnet authorizing the acquisition of Inextnet by Nextran and, prior to the February 8, 2008 letter, was never told of the transaction or any of its terms.

116.    Had Plaintiff known the material terms of the transaction, including the true financial circumstances of Nextran and Inextnet and the true business history and prospects for the two companies, all of which material information was omitted and withheld from her prior to this transaction, she would have withdrawn her investment in Inextnet and thereby avoided the losses she has suffered to date.

## II. NEXTRAN

### A.  Introduction

117.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

118.    Upon information and belief, Defendants managed and owned three companies, MMI, Nextran 2 and Innobeta which were collectively known as Nextran.

119.    Nextran was in the business of remote automated teller machines ("ATM") services, owning, operating and managing ATMs in retail and other commercial establishments.

120.    Upon information and belief, on or about August 20, 1999, Nextran, through MMI, entered into a Sponsorship Agreement ("Sponsorship") with Palm Desert National Bank ("Palm"), in which Palm sponsored Nextran's participation, through MMI, in debit card networks, including the STAR Network.

121.    Upon information and belief, Palm's sponsorship was essential to Nextran's business because:

      (a)    Nextran, through MMI, was an Independent Sales Organization ("ISO") and not a member of the STAR Network;

      (b)    Palm was and still is a depository financial institution or bank and member of the STAR Network;

      (c)    The STAR Network is an interbank electronic funds transfer network for the communication and settlement of certain types of financial transactions, including transactions initiated by bank customers at ATMs;

      (d)    Under the STAR Rules, only depository financial institutions or bank holding companies could become members of the STAR Network; and

19

(e)      ISOs, including Nextran, needed sponsorship by a STAR Network

member in order to participate in the STAR Network.

122.      Upon information and belief, without Palm, Nextran could not remain as a viable

business.

123.      Upon information and belief, in 2003, Citibank, N.A. ("Citibank"), a STAR

Network member, discovered a security breach within Nextran's ATMs, wherein Nextran's

ATMs intercepted Citibank's customers' personal and financial account information, without

their knowledge or consent.  On or about September 3, 2003, Citibank subsequently filed suit

against Palm and MMI in the United States District Court, Southern District of New York

entitled *Citibank, FSB v. Palm Desert Natl. Bank*, 1:03-cv-06846 (DLC) and Palm subsequently

terminated its Sponsorship of MMI.

124.      Upon information and belief, on or about April 18, 2005, Citibank settled its

action against Palm and MMI for one-million nine-hundred thousand dollars ($1,900,000.00) and,

on or about April 7, 2005, Nextran, through MMI, confirmed in writing to Palm that Nextran

intended to repay Palm for the one-million nine-hundred thousand dollars ($1,900,000.00)

advanced to settle the Citibank action.

125.      Upon information and belief, Nextran, without the means to meet its obligations,

began to look for alternative sources of finances in order to avoid liability.

## B.  Investment With Nextran

126.      Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs

as though set forth herein.

127.    On or about September 2005, Defendants T. Park and E. Park approached Plaintiff, because of her investment in Inextnet, which was solely managed by Defendants, regarding an investment in another company they controlled, Nextran.

128.    Defendants T. Park and E. Park represented to Plaintiff that they had another affiliated company, Nextran Group Inc., which would specializes in "money marketing" and ATM services.  Defendants expressly represented to Plaintiff as a potential investor in Nextran that it was poised to earn multifold profits because Nextran would be receiving financing from Lehman Brothers Holdings, Inc. ("Lehman"), then one of the largest investment services companies in the world.  Also, Defendants expressly represented that preferred shareholders were guaranteed to receive monthly dividends on their investment.  Further, Defendants represented that Nextran, after the initial financing, was expected to undergo an initial public offering.

129.    Defendants approached Plaintiff with a Nextran Group Inc. 2005 Confidential Information Memorandum, a prospectus containing projected financials of Nextran and other information.

130.    Upon information and belief, the 2005 Confidential Information Memorandum and Defendants' other representations to Plaintiff regarding Nextran were false and omitted material information.

131.    Upon information and belief, Defendants' representations were false because Nextran never received nor intended to receive financing from Lehman, never intended to undergo an initial public offering, nor intended for investors to receive monthly dividends, nor did any of these thing ever happen.

132.     Further, upon information and belief, Defendants omitted all facts regarding its prior important business relationship with Palm, including, without limitation:

(a)     The importance of Palm's Sponsorship to Nextran, through MMI;

(b)     Nextran's loss of the Palm's Sponsorship due to security breaches involving identity theft that resulted in multi-million dollar litigation brought by Citibank against Palm and Nextran;

(c)     Loss of the Palm Sponsorship and litigation brought by Citibank crippled Nextran's business;

(d)     Nextran's then-current dire financial circumstances and debt-ridden balance sheet;

(d)     Defendants have no intention to indemnify and repay Palm for the Citibank litigation, although Defendants had agreed to in writing; and

(e)     Certain self-dealing transaction Defendants intended to engage in, including giving Defendant Yang $500,000 of the invested funds.

133.     On or about September 30, 2005, Plaintiff reasonably relying on these material and fraudulent representations and omissions, invested one-hundred and fifty thousand dollars ($150,000.00) to receive two-thousand two-hundred and fifty (2,250) shares of Series A Convertible Preferred Stock of Nextran.  Defendants provided Plaintiff with just the signatory page of Series A Convertible Preferred Stock Agreement ("Stock Agreement") to which Plaintiff executed.

134.     Had Plaintiff known that Defendants made material and fraudulent representations and omissions, she would have not invested in Nextran nor lost the monies she invested.

135.    Several days later, Defendants provided Plaintiff with the complete Stock Agreement.  The Stock Agreement indicated that Nextran was selling up to forty-five thousand shares of Series A Convertible Preferred Stock at sixty-six dollars and sixty-seven cents ($66.67) per share.

136.    The Stock Agreement, purported to be a Regulation D small offering, pursuant to Regulation D of the Securities Act of 1933.

137.    Paragraph 2.16 of the Stock Agreement stated that it intended to use a portion of the proceeds from the offering to redeem fourteen-thousand nine-hundred and ninety-nine (14,999) shares owned by Defendant Yang for five-hundred thousand dollars ($500,000.00).

138.    At no time prior to Plaintiff's investment of one-hundred and fifty thousand dollars ($150,000.00) did Defendants T. Park and E. Park disclose that five-hundred thousand dollars ($500,000.00) of the invested funds would go to their mother, Defendant Yang.

139.    This was a material fraudulent omission in the solicitation of Plaintiff's investment.

140.    The Stock Agreement also contained an Amended and Restated Certificate of Incorporation of Nextran Group Inc.  The said Certificate stated that Nextran has the authority to issue a total of one-million eight-hundred thousand (1,800,000) shares: one-million five-hundred thousand (1,500,000) shares of common stock and three-hundred thousand (300,000) shares of preferred stock.

141.    At no time prior to Plaintiff's investment of one-hundred and fifty thousand dollars ($150,000.00) did Defendants T. Park and E. Park disclose that Nextran had the authority to issue a total of one-million eight-hundred thousand (1,800,000) shares: one-million five-

hundred thousand (1,500,000) shares of common stock and three-hundred thousand (300,000) shares of preferred stock.

142.    This was a material fraudulent omission in the solicitation of Plaintiff's investment.

143.    Upon information and belief, Defendants failed to file the required "Form D," the Notice of Exempt Offering of Securities, with the United States Securities and Exchange Commission ("S.E.C."), and/or Defendants failed to file a registration statement with the SEC.

144.    At no time prior to Plaintiff's investment of one-hundred and fifty thousand dollars ($150,000.00) did Defendants T. Park and E. Park disclose that Nextran failed to file the required "Form D," the Notice of Exempt Offering of Securities, with the S.E.C.

145.    This was a material fraudulent omission in the solicitation of Plaintiff's investment.

146.    Throughout 2006, Plaintiff contacted Defendants inquiring on the status of her promised dividend payments.  Plaintiff had yet to receive any dividends.

147.    On or about December 9, 2006, a special meeting of shareholders was held in Hackensack, New Jersey to discuss shareholders' concerns, dissatisfaction and losses of Nextran.

148.    At the meeting, Defendants T. Park and E. Park made the following representations:

      (a)    A presentation about Nextran's balance sheet and income statement; and

      (b)    Shareholders, including Plaintiff, that they will receive their dividends in August 2007.

149.     Upon information and belief, these financial statements were materially false and misleading in that they did not represent the true financial condition and data of Nextran, and Defendants never paid nor intended to pay shareholder dividends by August 2007.

150.     Had either the true financials or non-intention to pay dividends been disclosed, Plaintiff would have redeemed her shares in Nextran, demanded return of her investment and not have lost monies invested.

151.     Also, Defendants failed to notify shareholders, including Plaintiff, that on or about November 3, 2006, Palm filed suit against Nextan in the United States District Court, Central District of California entitled *Palm Desert Natl. Bank v. Money Marketing, Inc.*, EDCV06-1214 (VAP), to recover the one-million nine-hundred thousand dollars ($1,900,000.00) advance made to Nextran for the Citibank action settlement.

152.     Upon information and belief, this was a material fraudulent omission in order to hide the fact that Defendants never intended to repay Palm and mislead Plaintiff.

153.     Plaintiff, as well as the other shareholders, relying on the representations and omissions made by Defendants, cause the meeting adjourned without any resolutions and did not redeem their shares nor demanded their investment returned.

154.     Had Plaintiff known that Defendants representations and omissions were materially fraudulent, she would have redeemed her shares in Nextran, demanded return of her investment and not have lost monies invested.

155.     In August 2007, Defendants failed to pay dividends to shareholders, including Plaintiff.

156.     On or about October 6, 2007, as previously described above, special meeting of shareholders were held.

25

157.     During the meeting, Defendants T. Park and E. Park made fraudulent representations regarding new contracts being negotiated for substantial business for Nextran and Inextnet.   T. Park and E. Park represented that Nextran and Inextnet were at the final stages of negotiations of a very large deal with a third party or parties and that all of the members and shareholders were poised to receive multifold returns.

158.     Upon information and belief, this representation was false and directly or constructively known to be so by Defendants because no such transactions were in the final stages of negotiations.

159.     Non-managing members/unit holders of Inextnet and Shareholders of Nextran, including Plaintiff, reasonably relied on T. Park and E. Park's misrepresentations and omissions and the meeting ended without the members taking any action.

160.     Had Plaintiff known that Defendants made material and fraudulent representations, she would have immediately withdrawn her investment from Inextnet, redeemed her shares in Nextran and demanded return of her investment, and not lost the monies she invested.

161.     On or about February 16, 2008, an annual meeting of shareholders of Nextran was held.

162.     During the meeting, shareholders again voiced their concerns regarding the financial stability of Nextran and payout of their dividends.  Defendants T. Park and E. Park again represented a positive outlook and profit for Nextran.  Further, Defendants attempted to pass a resolution converting the Series A Convertible Preferred Stock to common stock, but it was rejected by preferred stockholders, including Plaintiff.  Also, acquisition of Inextnet was

announced, as alleged above.  Shareholders demanded access to the financials and accounting records of Nextran, but access was never given.

163.    On or about September 30, 2008, without the knowledge or consent of the shareholders, Defendants assigned and sold all or substantially all of Nextran's assets, including its intellectual property, to non-party NowCash LTD, Inc. for two-million five-hundred thousand dollars ($2,500,000.00).

164.    Throughout the period in which Plaintiff was a shareholder in Nextran, upon information and belief, Defendants intentionally and/or negligently mismanaged the business of the company by failing of take action required to revive its business, misappropriated corporate funds and committed corporate waste of assets by diverting Nextran's assets to their own personal use and to other unauthorized uses, and by engaging in the transaction to sell all or substantially all of the assets of Nextran without the knowledge or approval of the shareholders, for an inadequate consideration, none of which was ever used to pay Plaintiff any return on her investment.

165.    By reason of all the conduct alleged herein, Plaintiff has been damaged in an amount to be proved at trial.


### CLAIMS FOR RELIEF

### COUNT ONE
**Employment of Manipulative and Deceptive Devices in the
Offer and Sale of Securities in Inextnet
(Violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and
S.E.C. Rule 10b-5 [17 C.F.R. § 240.10b-5, et. seq.] )**

166.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

167.     On December 28, 2004 and March 29, 2005, Plaintiff invested a total of five-hundred thousand dollars ($500,000.00) into Inextnet and received five percent (5%) LLC non-management unit ownership in Inextnet.

168.     These non-management units are securities in that they were exchanged in a transaction that involved an investment of monies in an enterprise, with an expectation of profits to be earned through the efforts of someone other than investors.

169.     Further, the non-management units are securities, as defined in Section 3(a)(10) of the Securities Exchange Act of 1934 [15 U.S.C. § 78c(a)(10)], because they are a "certificate of interest or participation in any profit-sharing agreement."

170.     In December 2004, Defendants solicited and offered to Plaintiff the opportunity to invest in Inextnet, a company that purported to provide public wireless internet connections for a nominal fee.

171.     Defendants made the following representations when soliciting Plaintiff:

    (a)     Invested funds were to be used to purchase and/or develop equipment and software;

    (b)     Neither T. Park nor E. Park would take salaries or distributions from the invested funds; and

    (c)     Invested funds would be maintained in a segregated account.

172.     These representations made by Defendants were false and misleading when made: Defendants never intended to use invested funds to purchase and/or develop equipment and software; T. Park or E. Park intended to take salaries or distributions from the invested funds; and invested funds were not intended to be maintained in a segregated account.

173.    These misrepresentations were material in that they went to the core business functions and financial of Inextnet.

174.    These material misrepresentations were made in connection with the sale of securities, the LLC non-management unit ownership interest of Inextnet, in that they were made as part of the solicitation of Plaintiff's investment, at direct face to face meetings for the purpose of soliciting Plaintiff's investment.

175.    Defendants knew these representations were false when made.

176.    Plaintiff relied on Defendants' misrepresentations and made an initial investment of two-hundred and fifty thousand dollars ($250,000.00).

177.    Plaintiff's reliance was reasonable.

178.    Had Plaintiff known the truth of Defendants' misrepresentations she would not have invested her monies in Inextnet.

179.    Defendants conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested had conduct not taken place.

180.    In March 2005, Defendants again solicited an offered Plaintiff the opportunity in invest further into Inextnet.

181.    During that time, Defendants when soliciting Plaintiff, represented that Inextnet was in final negotiations with a major third-party and needed additional funds to purchase additional equipment to satisfy the third-party.

182.    This representations made by Defendants were false and misleading when made: Defendants were never in, nor near, final negotiations with a major third-party and did not need additional funds to purchase additional equipment.

183.    These misrepresentations were material in that they went to the core business functions and financial of Inextnet.

184.    These material misrepresentations were made in connection with the sale of securities, the LLC non-management unit ownership interest of Inextnet, in that they were made as part of the solicitation of Plaintiff's investment, at direct face to face meetings for the purpose of soliciting Plaintiff's investment.

185.    Defendants knew at the time of the misrepresentations and omissions of the falsity, materiality of the misrepresentations and the duty to discuss these material omissions

186.    Plaintiff relied on Defendants' misrepresentations and omissions and invested an additional two-hundred and fifty thousand dollars ($250,000.00), making her total investment five-hundred thousand dollars ($500,000.00).

187.    Plaintiff's reliance was reasonable.

188.    Had Plaintiff known the truth of Defendants' misrepresentations she would not have invested additional monies in Inextnet and would have demand and withdrawn her initial investment.

189.    Defendants conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested additional funds and would have withdrawn her initial investment, had Defendants' conduct not taken place.

190.    Plaintiff suffered out of pocket damages in the amount of five-hundred thousand dollars ($500,000.00), her investment in Inextnet, in addition to interest at the statutory rate.

191.    Further, on information and belief, Defendants travelled from New Jersey to New York, in order to offer and solicit Plaintiff, face to face, and also used cellular phones to call and solicit Plaintiff.

192.     By engaging in the above conduct, Defendants violated Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and S.E.C. Rule 10b-5 [17 C.F.R. § 240.10b-5, et. seq.].

193.     Accordingly, Defendants are liable, jointly and severally  liable  to Plaintiff, as per Section 20(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78t(a)] for five-hundred thousand dollars ($500,000.00) together with interest in an amount to be proved at trial.

### COUNT TWO
**Employment of Manipulative and Deceptive Devices in the
Offer and Sale of Securities in Nextran
(Violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and
S.E.C. Rule 10b-5 [17 C.F.R. § 240.10b-5, et. seq.] )**

194.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

195.     On September 30, 2005, Plaintiff invested one-hundred and fifty thousand dollars ($150,000.00) into Nextran and purportedly received two-thousand two-hundred and fifty (2,250) shares of Series A Convertible Preferred Stock of Nextran.

196.     These shares of Series A Convertible Preferred Stock of Nextran are securities in that they were exchanged in a transaction that involved an investment of monies in an enterprise, with an expectation of profits to be earned through the efforts of someone other than investors.

197.     Further, shares of Series A Convertible Preferred Stock of Nextran are securities, as defined in Section 3(a)(10) of the Securities Exchange Act of 1934 [15 U.S.C. § 78c(a)(10)], because they are a "stock . . . in any profit-sharing agreement."

198.    In September 2005, Defendants solicited and offered to Plaintiff the opportunity to participate in Nextran's purported Regulation D (17 C.F.R. § 230.501 et. seq.) private placement to purchase shares of Nextran.

199.    Defendants solicited Plaintiff with a Nextran Group, Inc. 2005 Confidential Information Memorandum ("Memorandum"), a prospectus containing the following representations:

      (a)    Current financial information; and

      (b)    Future financial projections;

200.    Defendants' Memorandum omitted following facts:

      (a)    Defendants prior important business relationship with Palm;

      (b)    The importance of Palm's Sponsorship to Nextran, through MMI;

      (c)    Nextran's loss of the Palm's Sponsorship due to security breaches involving identity theft that resulted in multi-million dollar litigation brought by Citibank against Palm and Nextran;

      (d)    Loss of the Palm Sponsorship and litigation brought by Citibank crippled Nextran's business;

      (e)    Damage to Nextran's reputation due to the Citibank litigation and loss of Palm's Sponsorship.

      (f)    Nextran's then-current dire financial circumstances and debt-ridden balance sheet;

      (g)    Defendants have no intention to indemnify and repay Palm for the Citibank litigation, although Defendants had agreed to in writing; and

    (g)      Nextran's insider, owner, director and/officer Yang, mother of T. Park and E. Park, would redeem for five-hundred thousand dollars ($500,000.00), fourteen-thousand nine-hundred and ninety-nine (14,999) shares owned by Yang from the proceeds from offering.

201.    When soliciting Plaintiff, Defendants orally represented that Nextran would soon be receiving financing from Lehman and expected to undergo an initial public offering (IPO).

202.    These representations and/or omissions made by Defendants were false and misleading when made:

    (a)      The current financial information was false;

    (b)      The projected financials were false;

    (c)      Intentionally omitted the importance of its prior business relationship with Palm;

    (d)      Intentionally omitted the loss of Palm's Sponsorship and relationship due to security breaches involving identity theft that resulted in multi-million dollar litigation brought by Citibank against Palm and Nextran;

    (e)      Intentionally omitted the damage of Nextran's reputation due to the Citibank litigation and loss of the Palm Sponsorship;

    (f)      Intentionally omitted the Defendants' non-intention to indemnify and repay Palm for the Citibank litigation;

    (g)      Lehman was not providing financing for Nextran purported IPO; and

    (h)      Intentionally omitted that Plaintiff's investment funds would be used to redeem Yang's shares.

203.    These misrepresentations were material in that they went to the core business functions and financial condition of Nextran.

204.    These material misrepresentations or omissions were made in connection with the sale of securities, the Series A Convertible Preferred Stock of Nextran, in that they were made as part of the solicitation of Plaintiff's investment, at direct face to face meetings for the purpose of soliciting Plaintiff's investment.

205.    Plaintiff relied on Defendants' misrepresentations and made an investment of one-hundred and fifty thousand dollars ($150,000.00).

206.    Had Plaintiff known the truth of Defendants' misrepresentations she would not have invested her monies in Nextran.

207.    Defendants conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested had Defendants' conduct not taken place.

208.    Plaintiff suffered out of pocket damages in the amount of one-hundred and fifty thousand dollars ($150,000.00), her investment in Nextran, in addition to interest at the statutory rate.

209.    Further, on information and belief, Defendants travelled from New Jersey to New York, in order to offer and solicit Plaintiff, face to face, and also used cellular phones to call and solicit Plaintiff.

210.    By engaging in the above conduct, Defendants violated Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and S.E.C. Rule 10b-5 [17 C.F.R. § 240.10b-5, et. seq.].

211.    Accordingly, Defendants are liable, jointly and severally  liable  to Plaintiff, as per Section 20(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78t(a)] for one-hundred and fifty-thousand dollars ($150,000.00) together with interest in an amount to be proved at trial.

**<u>COUNT THREE</u>**
**Breach of Fiduciary Duty - Inextnet**
**(Failure to Disclose, Self Dealing, Waste of Corporate Assets and Mismanagement)**

212.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein herein and brings this claim individually and derivatively on behalf of Nextran and Inextnet against Defendants to recover for the companies that which Defendants have wrongfully caused them to lose.

213.    At all material and relevant times herein, Defendants T. Park, E. Park, Yang and Boltuch were and still are the majority interest-holders, managing members, executives, directors, and officers of Inextnet and/or managed the day-to-day operations of Inextnet whereas Plaintiff was a non-managing minority interest-holder.

214.    As such, Defendants T. Park, E. Park, Yang and Boltuch owed fiduciary duties to Plaintiff, owing to Plaintiff duties of care, loyalty, candor, reasonable inquiry, oversight good faith and supervision.

215.    Defendants T. Park, E. Park, Yang and Boltuch knowingly participated and/or knowing undertook to conceal, the acquisition by Nextran of Inextnet and/or all or substantially all of its assets, without the knowledge, disclosure to or permission of Plaintiff and/or the other non-managing members/interest holders, who did not learn of the transaction or its terms until long after the transaction was consummated.

216.     Additionally, upon information and belief, the individual Defendants wasted and mismanaged the assets of Inextnet throughout the period alleged herein by failing to pursue the stated business of Inextnet, by engaging in self-dealing transactions without adequate disclosure and by diverting Inextnet's assets to uses not involving the business of Inextnet, including those Defendants' own personal uses.

217.     Accordingly, Defendants T. Park, E. Park, Yang and Boltuch breached their fiduciary duties to Plaintiff.

218.     Each of the misrepresentations and omissions detailed above represents further breaches of fiduciary duty by Defendants in connection with Inextnet.

219.     These breaches of fiduciary duty were material breaches.

220.     As the direct and proximate result of these breaches, Plaintiff's investment in Inextnet was given to Nextran and used for purposes unauthorized by Plaintiff and were lost.

221.     Plaintiff has suffered damages as the direct and proximate result of Defendants' breaches of fiduciary duty.

## COUNT FOUR
**Breach of Fiduciary Duty - Nextran**
**(Failure to Disclose, Self Dealing, Waste of Corporate Assets and Mismanagement)**

222.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein and brings this claim individually and derivatively on behalf of Nextran and Inextnet against Defendants to recover for the companies that which Defendants have wrongfully caused them to lose.

223.     At all material and relevant times herein, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues were and still are majority shareholders, executives,

36

directors, executives, officers of Nextran and/or managed the day-to-day operations of Nextran, whereas Plaintiff was a minority shareholder of Nextran.

224.    As such, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues were and still are fiduciaries of Plaintiff, owing duties of care, loyalty, candor, reasonable inquiry, oversight good faith and supervision to Nextran and its shareholders.

225.    Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues knowingly participated and/or knowing undertook to conceal, the sale of all or substantially all of Nextran's assets to non-party NowCash LTD, Inc. for two-million five-hundred thousand dollars ($2,500,000.00) without the knowledge, disclosure to or permission of Plaintiff or the other shareholders of Nextran.

226.    This transaction was grossly undervalued, not disclosed to and not authorized by the shareholders, including Plaintiff, and not in the best interest of Nextran or its shareholders, including Plaintiff and was therefore a breach of these defendants' fiduciary duties.

227.    Additionally, upon information and belief, the individual Defendants wasted and mismanaged the assets of Nextran throughout the period alleged herein by failing to pursue the stated business of Nextran, by engaging in self-dealing transactions without adequate disclosure and by diverting Nextran's assets to uses not involving the business of Nextran, including those Defendants' own personal uses.

228.    Each of the misrepresentations and omissions detailed above represents further breaches of fiduciary duty by Defendants in connection with Nextran.

229.    These breaches of fiduciary duty were material breaches.

230.   As the direct and proximate result of these fiduciary breaches, Plaintiff's investment in Nextran was given to NowCash LTD., used for purposes unauthorized by Plaintiff and were lost.

231.   Plaintiff has suffered damages as the direct and proximate result of Defendants' breaches of fiduciary duty.

## COUNT FIVE
### Negligent Misrepresentations and Omissions

232.   Plaintiff repeats and realleges the factual allegations in the foregoing and succeeding paragraphs as though set forth.

233.   At all relevant and material times herein, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues, as fiduciaries of Plaintiff, as persons managing and controlling Inextnet and Nextran, as majority interest-holders in Inextnet and Nextran, by virtue of undertaking to make representations to Plaintiff and under the applicable laws, each had a duty to disclose to Plaintiff the true material facts relating to the respective companies, their financial and business conditions, self-dealing transactions, the terms of proposed extraordinary transactions and all other material information relating to Plaintiff's investment in the respective companies.

234.   At all material times herein alleged, Defendants negligently, carelessly and/or recklessly breached these duties to disclose the true material facts to Plaintiff by failing to disclose them or by disclosing information that was false and misleading, as the case may be.

235.   At all times material hereto, these Defendant knew or should have known the true facts material to Plaintiff's investments and knew or should have known the falsity of the material misrepresentations they made to Plaintiffs.

236.     Accordingly, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues are liable to Plaintiff for negligent misrepresentations and omissions.

237.     Each of the misrepresentations and omissions detailed above and below are repeated here as though fully set forth, comprising Defendant's negligent misrepresentations.

238.     Each of these misrepresentations was material.

239.     As the direct and proximate result of these negligent misrepresentations, Plaintiff was directly and proximately caused to make and maintain investments with Defendants and their entities, as set forth herein.

240.     Plaintiff has suffered damages in the form of loss of invested funds as the result of Defendants' negligent misrepresentations and omission.


### COUNT SIX
### Common Law Fraud - Inextnet

241.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

242.     At all material and relevant times herein, Defendants T. Park, E. Park, Yang and Boltuch knowingly and intentionally made material representations or omissions that were fraudulent or misleading to Plaintiff.

243.     In December 2004, the following were material representations made by Defendants to Plaintiff, prior to her initial investment in Inextnet:

(a)     Invested funds were to be used to purchase and/or develop equipment and software to provide public wireless internet connections;

(b)     E. Park and T. Park would not take salaries or distributions from the invested funds; and

(c)     Investment funds would be maintained in a segregated account.

244.    Upon information and belief, Defendants representations were false:

(a)     Invested funds were never intended nor used to purchase and/or develop equipment and software to provide public wireless internet connections;

(b)     E. Park and T. Park intended to take salaries or distributions from the invested funds and did so, using the invested funds for their own personal purposes and diverting them to entities owned or controlled by Defendants; and

(c)     Investment funds were never maintained in a separate segregated account.

245.    Plaintiff reasonably relied on these material and fraudulent representations made by Defendants in making investments in Inextnet.

246.    On December 28, 2004, Plaintiff, relying on the material and fraudulent representations made by Defendants, was caused to invest two-hundred and fifty-thousand dollars ($250,000.00) in Inextnet.

247.    Had Plaintiff known that Defendants made material and fraudulent representations, she would not have invested into Inextnet and not lost the monies she invested.

248.    Had Defendants used the funds as represented, not taken distributions and maintained segregated accounts, Plaintiff would not have suffered the complete loss of her investment.

249.    The following were material representations made by Defendants to Plaintiff, prior to her second investment in Inextnet:

(a)     As per the Operating Agreement, Yang performs managerial work Inextnet, justifying Yang's thirty-five percent (35%) interest in Inextnet;

40

(b)      As per the Operating Agreement, the only way member capital accounts would be decreased would be through distributions to members and/or members sharing in the net loss; and

(c)      Inextnet was in final negotiations with a major third-party and needed additional funds to purchase additional equipment to satisfy the third-party.

250.     Upon information and belief, Defendants representations were false:

(a)      Yang, T. and E. Park's mother, never performed managerial work nor any work at Inextnet;

(b)      Capital accounts were decreased in unauthorized manners, including, without limitation, Defendants taking salaries or distributions from the invested funds and using the invested funds for their own personal purposes and diverting them to entities owned or controlled by Defendants; and

(c)      Inextnet was never in nor near final negotiations with a major third-party.

251.     Plaintiff reasonably relied on these material and fraudulent representations made by Defendants in making investments in Inextnet.

252.     On March 29, 2005, Plaintiff, relying on the material and fraudulent representations made by Defendants, was caused to invest an additional two-hundred and fifty-thousand dollars ($250,000.00) for an additional two and one-have percentage (2.5%) LLC unit ownership in Inextnet.

253.     Had Plaintiff known that Defendants made material and fraudulent representations, she would not have invested additional monies in Inextnet, withdrawn her initial investment and not lost the monies she invested.

254.   Throughout the relevant and material time period, the following were material representations or omissions made by Defendants to Plaintiff:

(a)   Nextran and Inextnet were affiliates, parents and/or subsidiaries of one another;

(b)   New contracts and a very large deal, for substantial business, were in the final stages of negotiations during the October 6, 2007 meeting; and

(c)   Provided Schedule K-1s, indicating that Plaintiff's 2005, 2006, 2007 and 2008 ending capital account balance in Inextnet were $465,164, $448,439, $431,465 and $407,465, respectively.

255.   Upon information and belief, Defendants representations were false:

(a)   Nextran and Inextnet are not affiliates, parents and/or subsidiaries of one another;

(b)   There were no new contracts or deals, for substantial business, that were in the final stages of negotiations; and

(c)   Schedule K-1s, indicating that Plaintiff's 2005, 2006, 2007 and 2008 ending capital account balance in Inextnet were either false or not created in accordance with GAAP.

256.   Plaintiff reasonably relied on these material and fraudulent representations omissions—consisting of the failure to disclose the facts that the invested funds were being used for purposes other than the business of Inextnet, including Defendants' own personal uses— made by Defendants in making her investments in Inextnet.

257.   Plaintiff, relying on the material and fraudulent representations made by Defendants, was caused take no action.

42

258.    Had Plaintiff known that Defendants made material and fraudulent representations or omissions, she would have withdrawn her initial investment and not lost the monies she invested.

259.    Defendants conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested had Defendants' conduct not taken place.

260.    Plaintiff suffered out of pocket damages in the amount of five-hundred thousand dollars ($500,000.00), her investment in Inextnet, in addition to interest at the statutory rate.

261.    Accordingly, Defendants are jointly and severally liable to Plaintiff for six-hundred and fifty thousand dollars ($650,000.00) together with interest in an amount to be proved at trial.


## COUNT SEVEN
### Common Law Fraud - Nextran

262.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

263.    At all material and relevant times herein, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues knowingly and intentionally made material representations or omissions that were fraudulent or misleading to Plaintiff.

264.    In September 2005, the following were material representations and omissions made by Defendants to Plaintiff, prior to her investment in Nextran:

    (a)    Nextran would soon undergo an IPO;

    (b)    Nextran would receive financing from Lehman;

    (c)    Preferred shareholders were guaranteed to receive monthly dividends on their investment;

43

(d)      Omitted the Defendants prior important business relationship with Palm;

(e)      Omitted the importance of Palm's Sponsorship to Nextran, through MMI;

(f)      Omitted the Nextran's loss of the Palm's Sponsorship due to security breaches involving identity theft that resulted in multi-million dollar litigation brought by Citibank against Palm and Nextran;

(g)      Omitted the loss of the Palm Sponsorship and litigation brought by Citibank crippled Nextran's business;

(h)      Omitted the damage to Nextran's reputation due to the Citibank litigation and loss of Palm's Sponsorship.

(i)      Omitted the information regarding Nextran's then-current dire financial circumstances and debt-ridden balance sheet;

(j)      Omitted that Defendants had no intention to indemnify and repay Palm for the Citibank litigation, although Defendants had agreed to in writing; and

(k)      Omitted that Nextran's insider, owner, director and/officer Yang, mother of T. Park and E. Park, would redeem for five-hundred thousand dollars ($500,000.00), fourteen-thousand nine-hundred and ninety-nine (14,999) shares owned by Yang from the proceeds from offering.

265.    Upon information and belief, Defendants representations or omissions were false and misleading:

(a)      Defendants never intended for Nextran to undergo an IPO;

(b)      Defendants never intended for Nextran to ever receive financing from Lehman;

(c)     Defendants never intended for Nextran to give preferred shareholders monthly dividends on their investment; and

(d)     Intentionally omitted Defendants prior important business relationship with Palm;

(e)     Intentionally omitted the importance of Palm's Sponsorship to Nextran, through MMI;

(f)     Intentionally omitted Nextran's loss of the Palm's Sponsorship due to security breaches involving identity theft that resulted in multi-million dollar litigation brought by Citibank against Palm and Nextran;

(g)     Intentionally omitted the loss of the Palm Sponsorship and litigation brought by Citibank crippled Nextran's business;

(h)     Intentionally omitted the damage to Nextran's reputation due to the Citibank litigation and loss of Palm's Sponsorship.

(i)     Intentionally omitted the information regarding Nextran's then-current dire financial circumstances and debt-ridden balance sheet;

(j)     Intentionally omitted that Defendants had no intention to indemnify and repay Palm for the Citibank litigation, although Defendants had agreed to in writing; and

(k)     Intentionally omitted that Nextran's insider, owner, director and/officer Yang, mother of T. Park and  E. Park, would redeem for five-hundred thousand dollars ($500,000.00), fourteen-thousand nine-hundred and ninety-nine (14,999) shares owned by Yang from the proceeds from offering.

266.    Plaintiff reasonably relied on these material, fraudulent and misleading representations and omissions made by Defendants in making her investments in Nextran.

267.    On September 30, 2005, Plaintiff, relying on the material and fraudulent representations made by Defendants, was caused to invest and/or maintain investment of one-hundred and fifty thousand dollars ($150,000.00) in Nextran.

268.    Had Plaintiff known that Defendants made material and fraudulent representations and omissions, she would not have invested monies in Nextran.

269.    Defendants' 2005 Memorandum contained the following representations and omissions:

(a)    Current Nextran financials;

(b)    Projected Nextran financials; and

(c)    Omitted, as stated above, the information regarding Palm and Citibank.

270.    On information and belief, Defendants representations and omissions were false:

(a)    Defendants' current financials were false;

(b)    Defendants' projected financials were false; and

(c)    Intentionally omitted, as stated above, the information regarding Palm and Citibank.

271.    Plaintiff reasonably relied on these material and fraudulent representations made by Defendants in maintaining investments in Nextran.

272.    On September 30, 2005, Plaintiff, relying on the material and fraudulent representations made by Defendants, was caused to invest and/or maintain investment of one-hundred and fifty thousand dollars ($150,000.00) in Nextran.

46

273.     Had Plaintiff known that Defendants made material and fraudulent representations and omissions, she would not have invested monies in Nextran.

274.     On September 30, 2005, Plaintiff, relying on the material and fraudulent omissions made by Defendants, was caused to invest and/or maintain investment of one-hundred and fifty thousand dollars ($150,000.00) in Nextran.

275.     Had Plaintiff known of these material omissions or that Defendants' intentionally omitted them, she would not have invested monies in Nextran.

276.     Throughout the relevant and material time period, Defendants' made the following representations and omissions:

(a)     Presented Nextran's balance sheet and income statement during the December 9, 2006 shareholder meeting;

(b)     Shareholders would receive dividend payments by August 2007;

(c)     Nextran was at the final stages of negotiations of a very large with a third-party or parties and that all of the shareholders were poised to receive multifold returns; and

(d)     Omitted that, on or about November 3, 2006, Palm filed suit against Nextran in the United States District Court, Central District of California entitled *Palm Desert Natl. Bank v. Money Marketing, Inc.*, EDCV06-1214 (VAP), to recover the one-million nine-hundred thousand dollars ($1,900,000.00) advance made to Nextran for the Citibank action settlement.

277.     Upon information and belief, Defendants representations and omissions were false:

(a)     Nextran's balance sheet and income statement during the December 9, 2006 shareholder meeting did not represent the actual financial condition of Nextran;

(b)     Shareholders did not receive dividend payments in August 2007, nor received any dividend payments;

(c)     Nextran was never in nor near the final stages of negotiations of a very large with a third-party or parties; and

(d)     Upon information and belief, Defendants intentionally omitted the information regarding the Palm lawsuit because Defendants never intended to repay Palm and mislead Plaintiff.

278.   Plaintiff reasonably relied on these material and fraudulent representations and omissions made by Defendants in making investments in Nextran.

279.   Plaintiff, relying on the material and fraudulent representations and omissions made by Defendants, was caused to not to redeem her shares in Nextran and withdraw her investment

280.   Had Plaintiff known of these material representations and omissions she would have redeemed her shares in Nextran and withdrawn her investment.

281.   Throughout the relevant time period, Defendants failed to disclose that the sale of all or substantially all of Nextran's assets to NowCash LTD, Inc.

282.   On information and belief, Defendants' failure to disclose was a fraudulent omission in order to misappropriate monies resulting from the sale.

283.   Plaintiff, relying on the material and fraudulent omission made by Defendants, was caused to not to redeem her shares in Nextran and withdraw her investment

284.    Had Plaintiff known of this material omission, she would have redeemed her shares in Nextran and withdrawn her investment.

285.    Defendants conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested had Defendants' conduct not taken place.

286.    Plaintiff suffered out of pocket damages in the amount of one hundred and fifty-thousand ($150,000.00), her investment in Nextran, in addition to interest at the statutory rate.

287.    Accordingly, Defendants are jointly and severally liable to Plaintiff for six-hundred and fifty thousand dollars ($650,000.00) together with interest in an amount to be proved at trial.


## COUNT EIGHT
### Violation of N.J.S.A. § 49:3-71 - Inextnet

288.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

289.    On December 28, 2004 and March 29, 2005, Plaintiff invested a total of five-hundred thousand dollars ($500,000.00) into Inextnet and received five percent (5%) LLC non-management unit ownership in Inextnet.

290.    These non-management units are securities in that they were exchanged in a transaction that involved an investment of monies in an enterprise, with an expectation of profits to be earned through the efforts of someone other than investors.

291.    Further, the non-management units are securities, as defined in Section 49(m) of the New Jersey Uniform Securities Law [N.J.S.A. § 49:3-49(m)], because they are a "certificate of interest or participation in any profit-sharing agreement."

292.     In December 2004, Defendants solicited and offered to Plaintiff the opportunity to invest in Inextnet, a company that purported to provide public wireless internet connections for a nominal fee.

293.     Defendants made the following representations when soliciting Plaintiff:

    (a)     Invested funds were to be used to purchase and/or develop equipment and software;

    (b)     Neither T. Park nor E. Park would take salaries or distributions from the invested funds; and

    (c)     Invested funds would be maintained in a segregated account.

294.     These representations made by Defendants were false and misleading when made: Defendants never intended to use invested funds to purchase and/or develop equipment and software; T. Park or E. Park intended to take salaries or distributions from the invested funds; and invested funds were not intended to be maintained in a segregated account.

295.     These misrepresentations were material in that they went to the core business functions and financial condition of Inextnet.

296.     These material misrepresentations were made in connection with the sale of securities, the LLC non-management unit ownership interest of Inextnet, in that they were made as part of the solicitation of Plaintiff's investment, at direct face to face meetings for the purpose of soliciting Plaintiff's investment.

297.     Plaintiff relied on Defendants' misrepresentations and made an initial investment of two-hundred and fifty dollars ($250,000.00).

298.     Had Plaintiff known the truth of Defendants' misrepresentations she would not have invested her monies in Inextnet.

299.     Defendants' conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested had conduct not taken place.

300.     In March 2005, Defendants again solicited an offered Plaintiff the opportunity in invest further into Inextnet.

301.     During that time, Defendants when soliciting Plaintiff, represented that Inextnet was in final negotiations with a major third-party and needed additional funds to purchase additional equipment to satisfy the third-party.

302.     These representations made by Defendants were false and misleading when made: Defendants were never in, or near, final negotiations with a major third-party and did not need additional funds to purchase additional equipment.

303.     These misrepresentations were material in that they went to the core business functions and financial of Inextnet.

304.     These material misrepresentations were made in connection with the sale of the LLC non-management unit ownership interest of Inextnet in that they were made as part of the solicitation of Plaintiff's investment, at direct face to face meetings for the purpose of soliciting Plaintiff's investment.

305.     Plaintiff relied on Defendants' misrepresentations and invested an additional two-hundred and fifty thousand dollars ($250,000.00), making her total investment five-hundred thousand dollars ($500,000.00).

306.     Had Plaintiff known the truth of Defendants' misrepresentations she would not have invested additional monies in Inextnet and would have demanded and withdrawn her initial investment.

307.     Defendants' conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested additional funds and would have withdrawn her initial investment, had Defendants' conduct not taken place.

308.     Plaintiff suffered out of pocket damages in the amount of five-hundred thousand dollars ($500,000.00), her investment in Inextnet, in addition to interest at the statutory rate.

309.     By engaging in the above conduct, Defendants violated §§ 71(a)(2) and 71(a)(3) of the New Jersey Uniform Securities Law [N.J.S.A. § 49:3-71(a)(2) and § 71(a)(3)].

310.     Accordingly, Defendants are jointly and severally liable to Plaintiff, as per § 71(d) of the New Jersey Uniform Securities Law [N.J.S.A. § 49:3-72(d)] for five-hundred thousand dollars ($500,000.00) together with interest in an amount to be proved at trial.

## COUNT NINE
### Violation of N.J.S.A. § 49:3-71 - Nextran

311.     Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

312.     On September 30, 2005, Plaintiff invested one-hundred and fifty thousand dollars ($150,000.00) into Nextran and received two-thousand two-hundred and fifty (2,250) shares of Series A Convertible Preferred Stock of Nextran.

313.     These shares of Series A Convertible Preferred Stock of Nextran are securities in that they were exchanged in a transaction that involved an investment of monies in an enterprise, with an expectation of profits to be earned through the efforts of someone other than investors.

314.     Further, shares of Series A Convertible Preferred Stock of Nextran are securities, as defined in Section 49(m) of the New Jersey Uniform Securities Law [N.J.S.A. § 49:3-49(m)], because they are a "stock . . . in any profit-sharing agreement."

315.   In September 2005, Defendants solicited and offered to Plaintiff the opportunity to participate in Nextran's purported Regulation D (17 C.F.R. § 230.501 et. seq.) private placement to purchase shares of Nextran.

316.   Defendants solicited Plaintiff, showing her the Memorandum, a prospectus containing the following representations:

(a)   Current financial information; and

(b)   Future financial projections;

317.   Defendants' Memorandum omitted or failed to mention the following facts:

(a)   Defendants' prior important business relationship with Palm;

(b)   The importance of Palm's Sponsorship to Nextran, through MMI;

(c)   Nextran's loss of the Palm Sponsorship due to security breaches involving identity theft that resulted in multi-million dollar litigation brought by Citibank against Palm and Nextran;

(d)   Loss of the Palm Sponsorship and litigation brought by Citibank crippled Nextran's business;

(e)   Damage to Nextran's reputation due to the Citibank litigation and loss of Palm's Sponsorship.

(f)   Nextran's then-current dire financial circumstances and debt-ridden balance sheet;

(g)   Defendants have no intention to indemnify and repay Palm for the Citibank litigation, although Defendants had agreed to in writing; and

(h)   Nextran's insider, owner, director and/officer Yang, mother of T. Park and E. Park, would redeem for five-hundred thousand dollars ($500,000.00),

fourteen-thousand nine-hundred and ninety-nine (14,999) shares owned by Yang from the proceeds from offering.

318.    When soliciting Plaintiff, Defendants orally represented that Nextran would soon be receiving financing from Lehman to undergo an initial public offering (IPO).

319.    These representations and omissions, together with the omissions of material facts alleged above, made by Defendants were false and misleading when made: the current financial information was false, the projected financials were false, omitted the importance of its prior Sponsorship with Palm and the irretrievable loss of that Sponsorship together with Nextran's reputation in the industry by reason of its involvement in identity theft through its ATM machines, omitted the reasons for the Citibank lawsuit, Lehman was not providing financing for Nextran purported IPO, and failed to mention that Plaintiff's investment funds would be used to redeem Yang's shares.

320.    These misrepresentations and omissions were material in that they went to the core business functions and financial condition of Nextran.

321.    These material misrepresentations or omissions were made in connection with the sale of securities, the Series A Convertible Preferred Stock of Nextran, in that they were made as part of the solicitation of Plaintiff's investment, at direct face to face meetings for the purpose of soliciting Plaintiff's investment.

322.    Plaintiff relied on Defendants' misrepresentations and made an investment of one-hundred and fifty thousand dollars ($150,000.00).

323.    Had Plaintiff known the truth of Defendants' misrepresentations she would not have invested her monies in Nextran.

54

324.    Defendants' conduct as set forth above was the direct and proximate cause of Plaintiff's losses in that she would not have invested had Defendants' conduct not taken place.

325.    Plaintiff suffered out of pocket damages in the amount of one-hundred and fifty thousand dollars ($150,000), her investment in Nextran, in addition to interest at the statutory rate.

326.    By engaging in the above conduct, Defendants violated §§ 71(a)(2) and 71(a)(3) of the New Jersey Uniform Securities Law [N.J.S.A. § 49:3-71(a)(2) and § 71(a)(3)].

327.    Accordingly, Defendants are jointly and severally liable to Plaintiff, as per § 71(d) of the New Jersey Uniform Securities Law [N.J.S.A. § 49:3-72(d)], for one-hundred and fifty thousand dollars ($150,000.00) together with interest in an amount to be proved at trial.

## COUNT TEN
### Unjust Enrichment

328.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

329.    At all material and relevant times herein, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues, upon information and belief, misappropriated corporate funds to their own personal uses, from monies invested by shareholders and members, including Plaintiff, from Nextran and Inextnet.

330.    Plaintiff's investment of a total of six-hundred and fifty thousand dollars ($650,000.00), of which, upon information and belief, all has been misappropriated by Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues.

331.    Accordingly, Defendants T. Park, E. Park, Yang, Boltuch, Hobbs, Sanford and Rodrigues have been unjustly enriched by the retention of misappropriated corporate funds, including Plaintiff's investment of six-hundred and fifty-thousand dollars ($650,000.00).

## SARBANES-OXLEY ACT PLEADING REQUIREMENT

332.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

333.    As set forth above, Plaintiff alleges that Defendants violated, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and S.E.C. Rule 10b-5 [17 C.F.R. § 240.10b-5, et. seq.].

334.    Under the Sarbanes-Oxley Act, Section 10(b) and Rule 10b-5 cause of actions must be brought no later than the earlier of "(1) two years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. 1658(b).

335.    In this Court, under the "inquiry notice" standard, the two-year period begins to run when Plaintiff "discovered or in the exercise of reasonable diligence should have discovered the basis for their claim against Defendants." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1325 (3d Cir. 2002). Once placed on inquiry notice, Plaintiff has a "duty to exercise reasonable diligence to uncover the basis for their claims, and are held to have constructive notice of all facts that could have been learned through diligent investigation the limitations period." *Id.* at 1326.

### A.    Inextnet

336.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

56

337.    Throughout the relevant and material time period, Plaintiff continued to rely on Defendants' material misrepresentations and omissions about Inextnet because Defendants provided to Plaintiff a Schedule K-1, indicating that Plaintiff's 2005, 2006, 2007 and 2008 ending capital account balance in Inextnet were $465,164, $448,439, $431,465 and $407,465, respectively, as well as, other false representations and material omissions indicating Plaintiff's investment in Inextnet was safe and in accordance with the terms Plaintiff had relied upon.

338.    On February 8, 2008, Plaintiff was placed on inquiry notice as to possible wrongdoing by Defendants, when Plaintiff, unaware of any resolution or written consent of the members/unit holders of Inextnet, received a letter from Inextnet and E. Park stating that pursuant to the October 6, 2007 meeting, the members of Inextnet approved the acquisition of Inextnet by Nextran.

339.    Thereafter, after several months of exercising reasonable diligence, Plaintiff realized that the representations and omissions made by Defendants, throughout the relevant time period, were materially fraudulent and misleading.

340.    Accordingly, Plaintiff has adequately and timely plead compliance with the statue of limitations under 28 U.S.C. 1658(b) for her Section 10(b) and Rule 10b-5 claims against Defendants.

## B.    Nextran

341.    Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as though set forth herein.

342.    Throughout the relevant and material time period, Plaintiff continued to rely on Defendants' material misrepresentations and omissions about Nextran because Defendants would continue to meet with shareholders, including Plaintiff, in which Defendants made false

representations and material omissions regarding Nextran's then-current financial conditions, projections and business transactions.

343.    In February 2008, after the annual meeting of shareholders held on February 16, 2008, Plaintiff was placed on inquiry notice as to possible wrongdoing by Defendants, when Defendants distributed the Action by Written Consent of the Preferred Stockholders which contained a resolution that stated that Preferred Stockholders, via written consent, consented to the conversion of Series A Convertible Preferred Stock of Nextran into common stock.

344.    Preferred shareholders, including Plaintiff , had no knowledge of this resolution and subsequently contacted Defendants and rejected same.

345.    Thereafter, after several months of exercising reasonable diligence, Plaintiff realized that the representations and omissions made by Defendants, throughout the relevant time period, were in fact fraudulent in nature when she discovered that, on or about September 30, 2008, Nextran sold all or substantially all of its assets, including its intellectual property, to non-party NowCash LTD, Inc. for two-million five-hundred thousand dollars ($2,500,000.00).

356.    Accordingly, Plaintiff has adequately and timely plead compliance with the statue of limitations under 28 U.S.C. 1658(b) for her Section 10(b) and Rule 10b-5 claims against Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)    Assume jurisdiction over this case;

(b)    Prays for judgment against all Defendants for all claims;

(c)     Grant an award of damages against Defendants, jointly and severally, for compensatory damages, in the amount of six-hundred and fifty-thousand dollars ($650,000.00) together with interest and cost of suit, including reasonable attorneys' fees;

(d)     Grant an award of punitive damages in a sum sufficient to punish and deter Defendants and each of them from engaging in such wrongful conduct in the future; and

(e)     Grant such other and further relief as is just and proper.

Dated: October 27, 2009
       New York, New York                  Respectfully,

By: _____
                IRIS W. FEIN (IWF-6826)

Iris W. Fein (IWF-6826)
Peter Jakab (*Pro Hac Vice* To Be Filed)
Alexander D. Lee (AL-2500)
FEIN & JAKAB
The Woolworth Building
233 Broadway · Suite 930
New York, New York 10279
(212) 732-9290 Telephone
(212) 227-6479 Facsimile

*Attorneys for Plaintiff*
*Un Chu (Nancy) Kang*